IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KINSALE INSURANCE COMPANY,

    Plaintiff,

v.

GABRIELLE NUMAIR,
NUKA ENTERPRISES, LLC, a Delaware limited liability company, and
SIMA SCIENCES, LLC d/b/a 1906, a dissolved Colorado limited liability company,

    Defendants.

---

## COMPLAINT

---

Plaintiff, Kinsale Insurance Company ("Kinsale"), by and through undersigned counsel, and pursuant to 28 U.S.C § 2201(a) and 2202 and Fed. R. Civ. P. 57, submits this Complaint for Declaratory Relief and Reimbursement and alleges as follows

### I.    NATURE OF THE ACTION

1. Defendant, Gabrielle Numair ("Numair"), filed a lawsuit against Nuka Enterprises, LLC and Sima Sciences, LLC d/b/a 1906 (sometimes collectively "Nuka"), Case No. 2025cv030445, District Court, Jefferson County, State of Colorado (the "Lawsuit").  In the Lawsuit, Numair seeks damages for injuries she allegedly sustained from the consumption of 1906 Midnight Drops manufactured, formulated, sold and/or distributed by Nuka.  *Ex. 1, Numair's Complaint.*

2. Nuka tendered the Lawsuit to Kinsale for defense and indemnification.  Kinsale is currently defending Nuka in the Lawsuit.  *Ex. 2, Kinsale's reservation of rights to Nuka.*

3. Kinsale seeks a declaration that it has no duty to defend or indemnify Nuka in the Lawsuit and reimbursement of all monies paid thus far to defend or indemnify Nuka in the Lawsuit.

## II.     PARTIES

4. Kinsale is a corporation organized under the laws of Arkansas with its principal place of business in Virginia.

5. At all times pertinent to this action and the Lawsuit, Gabrielle Numair ("Numair") is or was a citizen of the State of Colorado. Defendant Numair is named in this action to bind her to the Court's determination as to coverage for the Lawsuit.

6. Nuka Enterprises, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Connecticut.

7. Sima Sciences, LLC d/b/a 1906 was a limited liability company organized under the laws of Colorado but was recently dissolved. Its principal place of business was in Colorado.

## III.     JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Kinsale and the Defendants in this action, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Nuka Enterprises and Sima Sciences are or were limited liability companies. For any limited liability company, citizenship is based upon the citizenship of its members. Based upon Kinsale's investigation, no member of Nuka Enterprises or Sima Sciences is a citizen of Arkansas or Virginia. Thus, there is diversity of citizenship between Kinsale and Defendants, Nuka and Sima Sciences.

10. The Primary Policy issued by Kinsale is subject to a $1,000,000 per occurrence limit

of insurance. In the Lawsuit, Numair seeks damages in excess of $100,000 for personal injuries she sustained. *Ex. 3, Numair's Civil Cover Sheet in the Lawsuit.*

11. Pursuant to U.S.C. § 1391(a), venue is proper in this Court.

## IV.    THE POLICY

12. Kinsale issued a Cannabis and Hemp General Liability Policy – Claims Made Policy to Nuka under Policy No. policy number 0100220221-0, effective December 29, 2022 to December 29, 2023 (the "Primary Policy"). *Ex. 4, Primary Policy*. The Insuring Agreement to the Primary Policy provides:

> **SECTION I — COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **A. Insuring Agreement**
>
> **1.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the "insured" against any "suit" seeking those "damages". However, we will have no duty to defend the "insured" against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result. But:
> **a.** The amount we will pay for "damages" is limited as described in **SECTION III — LIMITS OF INSURANCE AND DEDUCTIBLE**; and
> **b.** Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements, or Supplementary Payments, or any combination thereof, under **Coverages A** or **B**. In such case, we shall have the right to withdraw from further defense, payment, or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.
>
> **2.** This insurance applies to "bodily injury" and "property damage" only if:

3

> **a.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> **b.** The "bodily injury" or "property damage" did not occur before the "retroactive date" shown in the declarations or after the end of the "policy period"; and
> **c.** A "claim" for "damages" because of the "bodily injury" or "property damage" is first made against any "insured", in accordance with Paragraph 3. below, during the "policy period" or any Extended Reporting Period we provide under **SECTION V — OPTIONAL EXTENDED REPORTING PERIOD**.
>
> **3.** All "claims" for "damages" because of "bodily injury" to the same person, including "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those "claims" is made against any "insured".
>
> All "claims" for "damages" because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".
>
> **4.** For the purposes of this insurance, all "bodily injury" or "property damage" logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice, or decision will be deemed to have first taken place at the time the first of such "bodily injury" or "property damage" took place. All such "bodily injury" or "property damage" will be deemed to be the same "bodily injury" or "property damage" even though the nature and extent of any resulting injury or damage may change and even though the resulting injury or damage may be continuous, progressive, cumulative, changing, or evolving, and even though the resulting injury or damage may be or may involve a continuous or repeated exposure to substantially the same general harm.
>
> **5.** Where there is no coverage under this Policy, there is no duty to defend.

13. The Insuring Agreement to the Primary Policy is modified by Endorsement Form CAN 2003 0322, which states, in pertinent part:

> **SECTION I — COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **A. Insuring Agreement**, item **2.** is deleted and replaced with the following:
>
> **2.** This insurance applies to "bodily injury" and "property damage" only if:

4

      **a.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **b.** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the "policy period";

      **c.** A "claim" for "damages" because of the "bodily injury" or "property damage" is first made against any "insured", in accordance with Paragraph **3.** below, during the "policy period" or any Extended Reporting Period we provide under **SECTION VI — OPTIONAL EXTENDED REPORTING PERIOD**; and

      **d.** A "claim" for damages because of the "bodily injury" or "property damage" is first reported to us in writing during the "policy period" or any Extended Reporting Period we provide under **SECTION VI — OPTIONAL EXTENDED REPORTING PERIOD**.

14. The following terms are defined in the Primary Policy:

    **SECTION VI — DEFINITIONS**

    …

    **C.** "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

    **D.** "Claim" means a written demand for monetary "damages".

    **E.** "Damages" means judgments, awards, and settlements that the "insured" becomes legally obligated to pay as a result of a covered "claim". "Damages" do not include declarative, injunctive, or other non-pecuniary or equitable relief, punitive or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

    …

    **P.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    …

    **T.** "Products-completed operations hazard":
      **1.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
        **a.** Products that are still in your physical possession; or
        **b.** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
          **(1)** When all of the work called for in your contract has been completed.
          **(2)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

>> **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.
>
> **2.** Does not include "bodily injury" or "property damage" arising out of:
>> **a.** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";
>> **b.** The existence of tools, uninstalled equipment or abandoned or unused materials; or
>> **c.** Products or operations for which the classification, listed in the Declarations or in a Policy schedule, states that products-completed operations are subject to the General Aggregate Limit.
>
> …
>
> **V.** "Retroactive date" means the date specified in the Declarations or endorsements to this Policy after which "bodily injury" or "property damage" must take place or an offense must be committed.
>
> **W.** "Suit" means a civil proceeding in which "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.
>
> …
>
> **Z.** "Your product":
>> **1.** Means:
>>> **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:
>>>> **(1)** You;
>>>> **(2)** Others trading under your name; or
>>>> **(3)** A person or organization whose business or assets you have acquired; and
>>> **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
>> **2.** Includes:
>>> **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product"; and
>>> **b.** The providing of or failure to provide warnings or instructions.
>> **3.** Does not include vending machines or other property rented to or located for the use of others but not sold.

15. The Primary Policy includes the following exclusions:

    **B. Exclusions Applicable to Coverage A**

This insurance does not apply to:

…

**ADDITIONAL EXCLUSIONS — COVERAGES A AND B** (the following exclusions apply to both **BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **PERSONAL AND ADVERTISING INJURY LIABILITY**)
This insurance does not apply to:

……

**O. Health Hazards**
Any "claim" or "suit" arising directly or indirectly out of, related to, or, in any way involving any actual or alleged emergence, contraction, aggravation, or exacerbation, or the threat or fear of the emergence, contraction, aggravation, or exacerbation, of any form of cancer, respiratory disease, cardiovascular disease, neurological disease, organ failure or disruption of function, mental illness, birth defect, or cannabinoid hyperemesis syndrome, as a result of the use or consumption of, or exposure to "your product".

This exclusion applies regardless of fault or intent, regardless of the particular cause of action, regardless of the relief sought including, without limitation, economic costs or injunctive relief, regardless of whether such "claim" or "suit" is brought by or on behalf of any individual, or group of individuals including a class action whether or not certified as such, who has suffered injury or damage or, by or on behalf of any municipality, county, state, federal or other domestic or foreign government entity, any regulatory authority, administrative agency, public foundation, non-profit organization, special interest group or other similar entity or individual who has not himself or herself suffered injury or damage.

This exclusion applies whether the "claim" or "suit" arises out of any actual or alleged marketing, distribution or other sales or similar practice, failure to warn or inadequate warning, defective design of "your product", interference with a right common to the general public including, without limitation, allegations of nuisance, or any other grounds for liability causing or contributing to the "claim" or "suit". This exclusion applies to any "claim" or "suit" regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence.

If a "claim" is made or a "suit" is filed that includes allegations which are excluded under this paragraph O, then this exclusion shall exclude coverage for the entire "claim" or "suit", regardless that any portion of the "claim" or "suit" is not excluded, and regardless that this insurance would apply in the absence of such excluded allegations.

16. The Primary Policy includes Form CAN 3019 0422 – Exclusion – Designated

7

Products, which states:

**EXCLUSION - DESIGNATED PRODUCTS**

**. . .**

**This endorsement modifies insurance provided under the following:**
**CANNABIS AND HEMP GENERAL LIABILITY COVERAGE**
**ELECTRONIC CIGARETTE GENERAL LIABILITY COVERAGE**
**CANNABIS AND HEMP PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**ELECTRONIC CIGARETTE PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**SCHEDULE**

| Description of "Your Product" | |
|---|---|
| Any and all products containing corydalis; Any and all products containing Artistolochia Fangchi | |

The following exclusion is added to this Policy:
This insurance does not apply to any Claim or "suit" arising directly or indirectly out of, related to, or in any way involving any of "your products" described in the Schedule above.

17. The Primary Policy includes Form ADF 2000 0622 – Policy Amendment – Extrinsic Evidence, which states:

**POLICY AMENDMENT – EXTRINSIC EVIDENCE**

**. . .**

**This endorsement modifies insurance under the following:**
**ALL COVERAGE FORMS**

Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:

Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any

8

claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

18. Kinsale issued a Commercial Excess Liability to Nuka under policy number 0100220345-0, effective December 29, 2022 to December 29, 2023, which is subject to a $3,000,000 per occurrence and $3,000,000 aggregate limit of liability in excess of the coverage provided by the Primary Policy (the "Excess Policy"). *Ex. 5, Excess Policy*. The Excess Policy follows form to the Primary Policy:

> **SECTION I- COVERAGE**
> **A. INSURING AGREEMENT**
> We will pay on behalf of the Named Insured those sums in excess of the "underlying insurance" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the "underlying insurance(s)", but for the exhaustion of the applicable Limits of Insurance.
>
> This policy shall follow the terms, definitions, conditions and exclusions of the "primary insurance" and of any other "underlying insurance" only to the extent coverage is further limited or restricted by the terms and conditions of such other "underlying insurance"; subject always to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy. If any provisions of the "underlying insurance" conflict with any provisions of this policy, the provisions of this policy will apply.
>
> This policy will not, in any event, provide broader coverage than that provided by the "underlying insurance". The amount we will pay for damages shall not exceed the Limits of Insurance stated in Item 1 of the Declarations.
>
> **B. DEFENSE, INVESTIGATION, SETTLEMENT**
> 1. When the Limit of Insurance of "underlying insurance" have not been exhausted, the Company will have the right but not the duty to participate in the investigation, defense and settlement of claims or suits against you seeking damages because of injury or damage to which this insurance might apply. If a claim or suit is settled within the limits of insurance of the "underlying insurance(s)", no costs will be payable by the Company.
>
> 2. When the Limit of Insurance of "underlying insurance" are exhausted by payments of judgments, settlements, and any costs or expenses subject to such limit, we will have a duty to defend claims or suits to which this

      insurance applies. We may, at our discretion, investigate and settle any claims or suits however we will have no duty to defend an insured against any claim or suit seeking damages to which this insurance does not apply. No other duty, obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for elsewhere in this policy.

3. Subject to the above provisions, costs incurred by you without the written consent of the Company shall be paid by you.
4. When we assume the defense of any claim or suit against you that seeks damages covered by this policy, we will pay all costs to the extent that such payments are not covered elsewhere.

5. If the "primary insurance" includes defense costs and expenses within the limits of insurance of those policy(ies), then any such payments we make are included within and will reduce the Limits of Insurance of this policy as shown in Item 1 of the Declarations.

6. We will have no duty to investigate, defend or settle claims or suits brought against you once the Limits of Insurance of this policy as stated in Item 1 of the Declarations are exhausted, or if claims or suits brought against you are excluded from coverage under this policy.

19. The Excess Policy includes Exclusion 6 – Duty to Defend which provides:

    6. **Duty to Defend**
       Where there is no coverage under this policy, there is no duty to defend.

20. The Excess Policy includes form CAX4014 1211 – Non-Drop Down Provision:

**NON-DROP DOWN PROVISION**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

Item 1. of **SECTION IV – LIMITS OF INSURANCE** is deleted and replaced with the following:

1. The Limit of Insurance under this policy applies only when the total applicable limits of the "underlying insurance" have been exhausted solely as a result of the actual payment of claims for damages by the underlying insurer(s) for claims that are covered under this policy, including if applicable actual payments by the underlying insurer(s) of any costs or expenses incurred in the investigation or defense of any claim covered under this policy. It shall be the insured's sole responsibility to provide other insurance or self-insurance for

any impairment of the underlying aggregate limit as a result of payments of claims for damages excluded under this policy.

21.   The Excess Policy includes Form CANX3002-0921-Exclusion – Cannabis Health Hazard, which provides:

**EXCLUSION – CANNABIS HEALTH HAZARD**

. . .

**This endorsement modifies insurance provided under the following: COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or suit arising directly or indirectly out of, related to, or, in any way involving any actual or alleged emergence, contraction, aggravation, or exacerbation, or the threat or fear of the emergence, contraction, aggravation, or exacerbation, of any form of cancer, respiratory disease, cardiovascular disease, neurological disease, organ failure or disruption of function, mental illness, birth defect, or cannabinoid hyperemesis syndrome, as a result of the use or consumption of, or exposure to "your product".

This exclusion applies regardless of fault or intent, regardless of the particular cause of action, regardless of the relief sought including, without limitation, economic costs or injunctive relief, regardless of whether such claim or suit is brought by or on behalf of any individual, or group of individuals including a class action whether or not certified as such, who has suffered injury or damage or, by or on behalf of any municipality, county, state, federal or other domestic or foreign government entity, any regulatory authority, administrative agency, public foundation, non-profit organization, special interest group or other similar entity or individual who has not himself or herself suffered injury or damage.

This exclusion applies whether the claim or suit arises out of any actual or alleged marketing, distribution or other sales or similar practice, failure to warn or inadequate warning, defective design of "your product", interference with a right common to the general public including, without limitation, allegations of nuisance, or any other grounds for liability causing or contributing to the claim or suit. This exclusion applies to any claim or suit regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence.

11

> If a claim is made or a suit is filed that includes allegations which are excluded under this endorsement, then this exclusion shall exclude coverage for the entire claim or suit, regardless that any portion of the claim or suit is not excluded, and regardless that this insurance would apply in the absence of such excluded allegations.
>
> It is agreed that the definition of "your product" in the "underlying insurance" applies to this endorsement.

22. The Excess Policy includes Form CAS3018-0110 – Exclusion Designated Products:

> **EXCLUSION – DESIGNATED PRODUCTS**
> . . .
> **This endorsement modifies insurance provided under the following:**
> **COMMERCIAL EXCESS LIABILITY COVERAGE**
>
> | SCHEDULE |
> | --- |
> | Description of Your Product(s): |
> | Any and all products containing corydalis; Any and all products containing Artistolochia Fangchi |
>
> The following exclusion is added to this policy:
>
> This insurance does not apply any claim or suit arising directly or indirectly out of, related to, or, in any way involving your products shown in the Schedule above.

### IV.     GENERAL ALLEGATIONS

23. According to the Complaint, Nuka manufactured, designed, formulated, assembled, tested, packaged, modified, sold, distributed, marketed, advertised and/or warranted a cannabis-infused product labeled 1906 Midnight Drops.  *Ex. 1 at ¶ 7.*  Nuka sold its 1906 Midnight Drops at licensed dispensaries in Colorado.  *Id. at ¶10.*

24. Numair alleges that she first purchased the 1906 Midnight Drops in February 2020 and continued to purchase the 1906 Midnight Drops to June 2023.  *Id. at ¶15.*

25. Numair alleges that she consumed one 1906 Midnight drop nightly from February

12

2020 to June 2, 2023. *Id. at ¶18.*

26. The 1906 Midnight Drops initially contained Corydalis. *Id. at ¶27.* Beginning on March 1, 2022, Nuka removed Corydalis from the formulation of the 1906 Midnight Drops and replaced it with Stephania. *Id. at ¶¶ 28-29.*

27. Within four months of consuming the 1906 Midnight Drops, Numair alleges that she began to suffer from elevated liver enzymes. *Id. at ¶21.* According to the Complaint, Numair became severely ill from hepatoxicity. *Id. at ¶ 22.*28. Numair contends that the unreasonably high levels of Corydalis and Stephania contained in the 1906 Midnight drops caused her liver damage. *Id. at ¶22, 23 and 25*

.**V.     CLAIMS FOR RELIEF**

**Count One – Declaratory Judgment – No Duty to Defend Under Primary Policy**

28. Kinsale incorporates by reference the allegations contained in the preceding paragraphs 1 through 27 as if set forth fully herein.

29. Kinsale's duty to defend under the Primary Policy extends only to the extent a "suit" seeks "damages" to which the insurance applies. Kinsale has no duty to defend against any "suit" to which the insurance does not apply.

30. The Primary Policy includes Exclusion O., Health Hazards, which bars coverage for "any 'claim' or 'suit' arising directly or indirectly out of, related to, or, in any way involving any actual alleged emergence, contraction, aggravation or exacerbation, or the threat or fear of the emergence, contraction, aggravation or exacerbation of any form of…organ failure or disruption of function…as a result of the use or consumption of, or exposure to 'your product' ".

31. The Complaint alleges that Numair consumed the 1906 Midnight Drops from

February 2020 to June 2023 and as a result sustained liver damage and the disruption of function of her liver.

32. Pursuant to the allegations in the Complaint, Exclusion O., Health Hazards, in the Primary Policy precludes coverage and Kinsale's duty to defend the Lawsuit.

33. The Primary Policy includes a Designated Product exclusion, which bars coverage for "any claim or 'suit' arising directly or indirectly out of, related to, or in any way involving any of 'your products' " containing Corydalis.

34. Pursuant to the allegations in the Complaint, Numair's injuries and damages were caused, at least in part, by her consumption of the 1906 Midnight Drops that contained Corydalis.

35. The Designated Products exclusions in the Primary Policy precludes coverage and Kinsale's duty to defend the Lawsuit.

36. Kinsale initially disclaimed coverage to Nuka. *Ex. 6.* Nuka later demanded defense and indemnification from Kinsale for the Lawsuit. *Ex. 7.* Kinsale agreed to defend Nuka under a reservation of rights. *Ex. 2.* Thus, an actual controversy has arisen and now exists with respect to whether Kinsale has a duty to defend Nuka in the Lawsuit.

37. Pursuant to Fed. R. Civ. P. 57(a), this Court can and should determine whether Kinsale has a duty to defend Nuka under the Primary Policy.

**Count Two – Declaratory Judgment – No Duty to Defend Under Excess Policy**

38. Kinsale incorporates by reference the allegations contained in the preceding paragraphs 1 through 37 as if set forth fully herein.

39. The Excess Policy is a follow form policy which follows the terms, definitions,

conditions and exclusions of the Primary Policy, subject to the policy period, policy limits, premiums, and all other terms, definitions, conditions and exclusions contained in the Excess Policy.

40. Because coverage is precluded under the Primary Policy, coverage is also precluded under the Excess Policy and Kinsale owes no duty to defend under the Excess Policy.

41. Additionally, the Excess Policy contains form CAX4014 1211 – Non-Drop Down Provision which states that coverage under the Excess Policy is available only when the Primary Policy has been exhausted.

42. Because the Primary Policy has not been exhausted, there is no coverage under the Excess Policy and Kinsale does not owe a duty to defend under the Excess Policy.

43. The Excess Policy also contains form CANX3002 0921 – Exclusion – Cannabis Health Hazard, which bars coverage for "any claim or suit arising directly or indirectly out of, related to, or, in any way involving any actual or alleged emergence, contraction, aggravation, or exacerbation, or the threat or fear of the emergence, contraction, aggravation, or exacerbation, of … organ failure or disruption of function… as a result of the use or consumption of, or exposure to 'your product'".

44. The Complaint alleges that Numair consumed the 1906 Midnight Drops from February 2020 to June 2023 and, as a result, sustained liver damage and the disruption of the function of her liver.

45. Pursuant to the allegations in the Complaint, form CANX3002 0921 – Exclusion – Cannabis Health Hazard, in the Excess Policy, precludes coverage and Kinsale has no duty to defend the Lawsuit.

46. The Excess Policy also contains form CAX3018 0110 – Exclusion – Designated Products which provides that "[t]his insurance does not apply to any claim or suit arising directly or indirectly out of, related to, or, in any way involving your products" containing corydalis.

47. Pursuant to the allegations in the Complaint, Numair's injuries and damages were caused, at least in part, by her consumption of the 1906 Midnight Drops that contained Corydalis.

48. The Designated Products exclusion in the Excess Policy precludes coverage and thus, Kinsale has no duty to defend the Lawsuit.

49. Kinsale initially disclaimed coverage to Nuke. *Ex. 6.* Nuke later demanded defense and indemnification from Kinsale for the Lawsuit. *Ex. 7.* Kinsale agreed to defend Nuke under a reservation of rights. *Ex. 2.* Thus, an actual controversy has arisen and now exists with respect to whether Kinsale has a duty to defend Nuke in the Lawsuit.

50. Pursuant to Fed. R. Civ. P. 57(a), this Court can and should determine whether Kinsale has a duty to defend Nuke under the Excess Policy.

**Count Three – Declaratory Judgment – No Duty to Indemnify Under the Primary Policy**

51. Kinsale incorporates by reference the allegations contained in the preceding paragraphs 1 through 50 as if set forth fully herein.

52. The "duty to indemnify does not arise unless the policy actually covers the alleged harm". *Constitution Assoc. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).

53. The duty to defend is broader than the duty to indemnify and, therefore, "[w]here there is no duty to defend, it follows that there can be no duty to indemnify". *Id*.

54. As stated above, there is no duty to defend under the Primary Policy due to Exclusion O. Health Hazards and the Designated Product exclusion.

16

55. Because there is no duty to defend under the Primary Policy, there is no duty to indemnify under the Primary Policy.

56. An actual controversy has arisen and now exists with respect to whether Kinsale has a duty to indemnify Nuka in the Lawsuit under the Policies.

57. Pursuant to Fed. R. Civ. P. 57(a), this Court can and should determine the rights and obligations under the Policies with respect to the Lawsuit.

### Count Four – No Duty to Indemnify Under the Excess Policy

58. Kinsale incorporates by reference the allegations contained in paragraphs 1 through 57 as if set furth full herein.

59. The "duty to indemnify does not arise unless the policy actually covers the alleged harm". *Constitution Assoc. v. New Hampshire Ins. Co.*, 930 P.2d at 563.

60. The duty to defend is broader than the duty to indemnify and, therefore, "[w]here there is no duty to defend, it follows that there can be no duty to indemnify". *Id*.

61. As stated above, there is no duty to defend under the Excess Policy due to Duty to Defend Exclusion, the Non-Drop Down Provision, the Exclusion – Cannabis Health Hazard, and the Exclusion – Designated Products.

62. Because there is no duty to defend under the Excess Policy, there is no duty to indemnify under the Excess Policy.

63. An actual controversy has arisen and now exists with respect to whether Kinsale has a duty to indemnify Nuka in the Lawsuit under the Policies.

64. Pursuant to Fed. R. Civ. P. 57(a), this Court can and should determine the rights and obligations under the Policies with respect to the Lawsuit.

### Count Five – Reimbursement

65. Kinsale incorporates by reference the allegations contained in paragraphs 1 through 64 as if set forth fully herein.

66. Kinsale is defending Nuka in the Lawsuit under a reservation of rights and has incurred, and will continue to incur, attorneys' fees and costs to defend Nuka in the Lawsuit.

67. Because the Lawsuit does not allege or potentially allege damages covered under the Primary Policy nor Excess Policy, Kinsale has no duty to defend Nuka.

68. Therefore, Kinsale should be reimbursed for the attorneys' fees and costs incurred to defend Nuka in the Lawsuit to date.

WHEREFORE, Kinsale respectfully requests that this Court enter judgment in their favor and against the Defendants and declare that:

(1) Kinsale has no duty to defend Nuka in the Lawsuit under the Primary Policy;

(2) Kinsale has not duty to defend Nuke in the Lawsuit under the Excess Policy;

(3) Kinsale has no duty to indemnify Nuka in the Lawsuit under the Primary Policy

(4) Kinsale has not duty to indemnify Nuke in the Lawsuit under the Excess Policy.

(5) Kinsale is entitled to reimbursement of all attorneys' fees and costs incurred to defend Nuka in the Lawsuit.

Nuka further seeks relief for any interest and/or costs as allowed by law.

Respectfully submitted this 9th day of December, 2025.

/s/ *Jane E. Young*
Jane E. Young
Wilson Elser Moskowitz Edelman & Dicker, LLP
1225 17th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 572-5336
Email: Jane.Young@WilsonElser.com

*Attorneys for Plaintiff, Kinsale Insurance Company*

## CERTIFICATE OF SERVICE

       I further certify that on this 9th day of December, 2025, a true and correct copy of the foregoing COMPLAINT was electronically filed with the Clerk of Court and served on all parties of record using the CM/ECF system:

*/s/ Jane E. Young*
Jane E. Young
Wilson Elser Moskowitz Edelman & Dicker, LLP
1225 17th Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 572-5336
Email: Jane.Young@WilsonElser.com

*Attorneys for Plaintiff, Kinsale Insurance Company*